IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DIEN XUAN NGO,                      §
                                    §
            Petitioner,             §
                                    §
v.                                  §      No. 3:25-cv-1943-L (BT)
                                    §
KRISTI NOEM, et al.,                §
                                    §
            Respondents.            §

**FINDINGS, CONCLUSION, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Petitioner, a native and citizen of Vietnam, challenges his immigration detention in a petition for a writ of habeas corpus under 28 U.S.C. § 2241. As explained below, the District Judge should deny Petitioner's habeas claims and dismiss this action.

**Background**

Petitioner entered the United States as a refugee in or around 1980, when he was five or six years old, and later obtained lawful permanent resident status. Pet. ¶ 14 (ECF No. 2); Resp'ts' App. 003 ¶ 4 (ECF No. 13). Forty years later, he was convicted in state district court on seven counts of Burglary of Habitation and was sentenced to five years' confinement on each count, to be served concurrently. *See* Resp'ts' App. 007–34; Resp. at 1. Thereafter, the United States Department of Homeland Security issued Petitioner a Notice to Appear initiating removal proceedings in immigration court, and an immigration judge ordered Petitioner

removed. Resp'ts' App. 036, 041; Pet'r's App. at 76–77. Petitioner does not challenge this decision and "is not attempting to stop his removal to Vietnam now." Reply at 3.

In 2023, United States Immigration and Customs Enforcement's (ICE) Enforcement Removal Operations (ERO) determined that it could not remove Petitioner, Pet. ¶ 17; Resp. at 2, so—after 85 days in immigration custody—Petitioner was released under an Order of Supervision (OSUP). TRO at 2; Resp. at 2. But on July 22, 2025, during Petitioner's annual check-in under the OSUP, ICE took Petitioner into custody and transported him to the ICE-ERO Dallas Field Office, and then to the Prairieland Detention Center in Alvarado, Texas. Pet. ¶¶ 19, 21; Joint Status Report (JSR) at 2 n.1 (ECF No. 17).[1]

Petitioner, represented by counsel, filed an Emergency Petition for Writ of Habeas Corpus (ECF No. 2) and an Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction (TRO) (ECF No. 4) raising two primary arguments challenging the legality of his detention: that (i) ICE failed to follow the removal procedures required by 8 C.F.R. § 241.13(i); and (ii) his removal is not

---

[1] As of September 2, 2025, Petitioner was detained at the Florence Correctional Center in Florence, Arizona. JSR at 2. The parties do not dispute that this Court continues to have jurisdiction over these proceedings as Petitioner was detained in this District when he filed his petition. JSR at 2 n.1. *See Griffin v. Ebbert*, 751 F.3d 288, 290–91 (5th Cir. 2014) ("Jurisdiction attached on that initial filing for habeas corpus relief [under § 2241], and it was not destroyed by the transfer of petitioner. . . .").

significantly likely in the reasonably foreseeable future, thus violating his rights under the Due Process Clause of the Fifth Amendment to the United States Constitution. *See* Pet. ¶¶ 69–73. Petitioner's habeas application and TRO are ripe for determination.[2]

### Legal Standards

Aliens subject to a removal order may file a habeas corpus petition under 28 U.S.C. § 2241 when they wish to challenge their post-removal-period detention on constitutional grounds. *See Zadvydas v. Davis, 533 U.S. 678, 687–99 (2001)*. On May 11, 2005, Congress enacted the Real ID Act, stripping district courts of jurisdiction over § 2241 petitions attacking removal orders. *See* 8 U.S.C. § 1252(a)(B)(ii). But district courts may exercise habeas jurisdiction to review challenges to post-removal-period detentions that do not attack removal orders. *See I.N.S. v. St. Cyr, 533 U.S. 289, 312–13 (2001)*; *Baez v. Bureau of Immigr. & Customs Enf't, 150 F. App'x 311, 312 (5th Cir. 2005)* (per curiam) ("Section 106(a) of the [REAL ID] Act does not, however, preclude habeas review of challenges to detention that are independent of challenges to removal orders.").

Further, § 2241 grants district courts "the authority to grant writs of habeas corpus 'within their respective jurisdictions.' " *See Lee v. Wetzel, 244 F.3d 370, 373 (5th Cir. 2001)* (citing 28 U.S.C. § 2241). Thus, a district court has jurisdiction to

---

[2] The parties do not oppose consolidating the issues before the Court. JSR at 1.

entertain an alien's habeas petition under § 2241 if that alien is detained within that court's district or otherwise filed his habeas application while detained within the court's district. *Id.* at 374–75; *Griffin v. Ebbert,* 751 F.3d 288, 290–91 (5th Cir. 2014) ("Jurisdiction attached on that initial filing for habeas corpus relief [under § 2241], and it was not destroyed by the transfer of petitioner. . . .").

A district court may grant a writ of habeas corpus to any person who shows he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). The right to challenge confinement "through a petition for a writ of habeas corpus . . . extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr,* 455 F. Supp. 3d 896, 900–01 (D. Minn. Apr. 22, 2020) (citing *Preiser v. Rodriguez,* 411 U.S. 475, 485 (1973); *Zadvydas,* 533 U.S. at 687; and *Demore v. Kim,* 538 U.S. 510, 517 (2003)).

"Petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W.H. v. Trump,* 2025 WL 1420131, at \*7 (D. Minn. May 14, 2025), *vacated on other grounds* (citing *Freeman v. Pullen,* 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (quoting in turn *McDonald v. Feeley,* 535 F. Supp. 3d 128, 135 (W.D.N.Y. 2021)); *Lallave v. Martinez,* 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022) (quoting in turn *Skaftouros v. United States,* 667 F.3d 144, 158 (2d Cir. 2011)); *Bradin v. United States Prob. & Pretrial Servs.,* 2022 WL 1154622, at \*3 (D. Kan. Apr. 19, 2022) (citing cases discussing burden of

proof in a habeas case under § 2241)) (cleaned up).

## Analysis

### I. Petitioner is not entitled to relief for alleged violations of 8 C.F.R. § 241.13(i).

Section 8 C.F.R. § 241.13 "establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at [8 C.F.R.] § 241.4." 8 C.F.R. § 241.13(a). Section (i) of this regulation allows ICE to revoke an alien's release "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon such determination, ICE must follow specific procedures:

> [T]he alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

Id. § 241.13(i)(3).

Petitioner states that ICE "provided no notice, no evidence, and no finding of any changed circumstance specific to [Petitioner]." TRO at 4. Instead, Petitioner alleges, ICE "summarily detained him during a routine annual check-in." Id. at 4. Respondents disagree. See Resp. at 6–8.

5

### a. Respondents did not violate the procedural requirements of 8 C.F.R. 241.13(i)(3).

There is authority in this District confirming that alien re-detainees with final orders of removal are entitled "to notice, an informal interview, and a limited opportunity to respond and present information regarding the changed circumstances" under 8 C.F.R. § 241.13(i)(3). *See Nguyen v. Noem, 797 F. Supp. 3d 651, 663 (N.D. Tex. Aug. 10, 2025)*. As stated, Petitioner claims that ICE failed to abide by these procedural requirements. Reply at 11. But Respondents assert that they have complied with these requirements:

> Petitioner was notified of the reason for the revocation of his release (namely, a significant likelihood removal could be effectuated due to changed circumstances between the United States and the Socialist Republic of Vietnam) and was given an informal interview. Petitioner was not entitled to additional process under the regulations.

Resp. at 7 (internal citation omitted). In support, Respondents provide a declaration from an ICE Deportation Officer (DO), who is assigned to Petitioner's case:

> At the time of his arrest, [Petitioner] was informed that he would be detained because he was subject to a final order of removal and there is now a likelihood of removal back to Vietnam. In accordance with 8 C.F.R. § 241.13(i)(3), [Petitioner] was informed that the reason for his revocation was that ICE believed that he could be removed to Vietnam. [Petitioner] was given the opportunity to respond during this informal interview.

App. 004 ¶ 10.

Petitioner argues that these assertions from Respondents are conclusory and devoid of factual detail. Reply at 18.

First, Petitioner notes that the DO's declaration "fails to state who conducted the interview, what specific information was provided to [Petitioner], or how he was given a meaningful opportunity to respond." *Id.* Petitioner also highlights that the DO "does not claim to have personal knowledge of the arrest, and his duties appear to be administrative, suggesting his statements are based on a second-hand file review." *Id.*

Second, Petitioner states that Respondents have failed to provide contemporaneous documentation of the alleged informal interview. *Id.* "Based on information, belief, and [counsel's] extensive experience," Petitioner contends that ICE documents arrests "as a matter of course on documents such as an I-213 Record of Deportable Alien, or other relevant forms." *Id.* at 17 n.29. "Instead of such evidence, ICE has submitted a declaration that does not even purport to be from the officer who re-detained [Petitioner] on July 22, 2025." *Id.*

Petitioner cites several cases from outside this jurisdiction suggesting that the failure to provide notice and an interview under § 241.13(i) is a failure warranting immediate release from detention. *Id.* at 19 (citing cases). But this authority is not binding on the Court.

Petitioner offers only conclusory statements to rebut Respondents' contentions that they complied with all relevant procedural requirements. And

7

similar arguments did not persuade the court in *Nguyen v. Noem*. 797 F. Supp. 3d at 661–62.[3] Rather, the court in *Nguyen* found that a DO's sworn declaration as to compliance with the procedural requirements of § 241.13(i) was enough to undermine the petitioner's similar assertions that he was not provided the process to which he was entitled under § 241.13(i). *Id*. at 662.

Moreover, the court in *Nguyen* relied on the presumption of regularity to resolve any factual dispute:

> The presumption of regularity supports the official acts of public officers and requires courts to presume that they have properly discharged their official duties. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996). This presumption applies to government agencies. *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001). "[T]he presumption of regularity is subject to be rebutted" and "stands until dislodged." *R.H. Stearns Co. of Boston v. United States*, 291 U.S. 54, 63 (1934). The petitioner in a habeas proceeding bears the burden of displacing the presumption: "[i]t cannot be argued, without factual support, that the [respondents] failed to do [their] full duty with an intelligent, competent[,] and understanding appreciation of all of [their] . . . obligations." *Bute v. People of State of Ill.*, 333 U.S. 640, 671 (1948).

*Id*. Because the DO in *Nguyen* was a supervisory officer familiar with the petitioner's case and provided a declaration under penalty of perjury—and because the petitioner only provided bare assertions that the procedural requirements were not met—the court in *Nguyen* concluded that Respondents did not violate § 241.13(i). *Id*. Importantly, the DO in *Nguyen*, was not the officer who re-detained

---

[3] Petitioner's counsel here also represented the petitioner in *Nguyen v. Noem*, 797 F. Supp. 3d 651, 663 (N.D. Tex. Aug. 10, 2025).

the petitioner. *See Nguyen v. Noem*, 6:25-cv-057-H, ECF No. 14, App. 002–03 (N.D. Tex. July 28, 2025).

The analysis in *Nguyen* is persuasive. *See Yates v. Collier, 677 F. App'x 915, 918 n.8 (5th Cir. 2017)* (quoting *Salter v. Continental Cas. Co., 2004 WL 5573421, at \*5 (M.D. Ga. Oct. 29, 2004)*) (noting that "district courts are 'inclined to follow the example of other district courts within [their] circuit"). Here, just as in *Nguyen*, Petitioner only provides bare assertions that ICE failed to comply with § 241.13(i). And those bare assertions are insufficient to rebut the presumption of regularity or show that Respondents did not violate the procedural requirements of § 241.13(i).

### b. Even if Respondents violated relevant procedural requirements, such error is harmless.

"Harmless error applies in immigration cases generally." *Nguyen, 797 F. Supp. 3d at 662* (citing *Jalloh v. Garland, 2023 WL 1859918, at \*2 (4th Cir. 2023)* (citing in turn *Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004)*) (further citation omitted)). The same is true for an agency's procedural violations. *See City of Arlington v. FCC, 668 F.3d 229, 243–44 (5th Cir. 2012)*. Under a harmless-error analysis, the party asserting error bears the burden of proving prejudice. *Id.* at 243.

In *Nguyen*, the court determined that violations of ICE's procedural requirements found in § 241.13 are harmless. *See Nguyen, 797 F. Supp. 3d at 662–63*. The court reasoned that the petitioner challenging these violations "received more procedure than he was due under 8 C.F.R. § 241.13(i)(3)" through litigation.

*Id.* Indeed, the petitioner "had the opportunity to obtain counsel," "make a full argument to a federal court regarding his detention, submit evidence, and respond to the respondents' arguments." *Id.* The court added that the petitioner was also "provided information of a scope greater than what he was entitled to under Section 241.13(i)(3)" and "given the opportunity for review from a federal court, which . . . reviewed questions of law de novo." *Id.*

Since, in the court's opinion, the petitioner "had more than a full notice and opportunity to be heard," the court concluded that "even if the respondents failed to abide by Section 241.13(i)(3), the error [was] now harmless in light of the procedures in this case." *Id.* And, because "habeas is not backward-looking, . . . the process [provided to the petitioner] render[ed] forward-looking relief separately inappropriate." *Id.*; *see also id.* at 670 ("In habeas, the Court does not review all possible previous errors, it asks only whether the confinement is justified.").

Again, this reasoning is persuasive. Through these proceedings, Petitioner has received notice of the revocation of his release, the reason for such revocation, and ample opportunity to respond to Respondents' arguments.

So even if Respondents failed to comply with the procedural requirements of § 241.13, the Court should decline to grant habeas relief on such grounds at this time.

**c. Even if Respondents failed to abide by the requirements of 8 C.F.R. § 241.13(i)(3), and the error were harmful, a writ of habeas corpus would not be the appropriate remedy.**

Petitioner contends that "when ICE fails to provide the interview and notice required by § 241.13(i), its decision to re-detain is invalid and release is the proper remedy." Reply at 19. In support of this contention, Petitioner cites various cases, none of which are binding on this Court. *See id.* (citing cases). But courts in this Circuit have found that "a violation of § 241.13(i)(3) alone cannot justify habeas relief." *Nouansisouhak v. Noem*, 2025 WL 3165161, at *6 (N.D. Tex. Oct. 9, 2025), *rec. adopted*, 2025 WL 3161730 (N.D. Tex. Nov. 12, 2025); *see also Nguyen*, 797 F. Supp. 3d at 661–62. Rather, § 241.13(i)(3) "is a mere administrative regulation, not required as the result of the Constitution." *Nouansisouhak*, 2025 WL 3165161, at *6 (citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272–73 (2010)).

Petitioner has also failed to explain why the alleged failure to follow the procedures of Section 241.13(i)(3) render his detention itself unlawful. Under the plain language of the regulation, notice and an informal interview are not prerequisites for detention. The regulation contemplates that these procedures will occur after detention begins because notice is to happen "upon revocation" and the initial informal interview occurs "after [the alien's] return to [ICE] Custody." 8 C.F.R. § 241.13(i)(3). The alien may then "submit any evidence or information that

he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.*

Habeas is limited to grant relief from unlawful imprisonment or custody. *Nguyen*, 797 F. Supp. 3d at 665 (citing *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976)). *Zadvydas* held that courts can review statutory and constitutional challenges to post-removal-period detention, 533 U.S. at 688, but the Court lacks jurisdiction over other challenges arising from decisions or actions to initiate proceedings, adjudicate cases, or execute removal orders, 8 U.S.C. § 1252(g). Thus, even if Respondents did not abide by the requirements of § 241.13(i)(3), it need not follow that the Court must order Respondents to fulfill these administrative requirements through a habeas petition. *See Nguyen*, 797 F. Supp. 3d at 665.

For all the reasons stated above, the District Judge should deny Petitioner's habeas application and dismiss this action.

**II.** **Because circumstances have changed and there is now a significant likelihood that Petitioner may be removed to Vietnam in the reasonably foreseeable future, Respondents did not violate 8 C.F.R. § 241.13(i)(2) or the Fifth Amendment.**

Petitioner also claims that his continued detention violates his due process rights because he does not believe Respondents can remove him to Vietnam in the reasonably foreseeable future. *See* Pet. ¶¶ 72–73. Petitioner insists that, while *Zadvydas* does not apply to this action, the Court should follow the constitutional principles set forth in that case and order his release. Reply at 7–8.

12

The Court agrees that *Zadvydas* does not apply here. *See Escalante, 2025 WL 2206113, at \*3* ("*Zadvydas* . . . dealt with the initial detainment of an alien awaiting removal. After *Zadvydas*, the immigration regulations were revised to implement administrative review procedures for those aliens detained beyond the removal period, including those who are re-detained upon revocation of their supervised release."); *Nguyen, 797 F. Supp. 3d at 670* (noting that *Zadvydas* "is about detention under 8 U.S.C. § 1231(a)(6), not re-detention in anticipation of removal under 8 C.F.R. 241.13(i)"). But other courts in this Circuit have indeed cited *Zadvydas* in re-detention cases. *See Nouansisouhak, 2025 WL 3165161, at \*3*; *Trejo v. Warden of ERO El Paso E. Montana, 2025 WL 2992187, at \*4 (W.D. Tex. Oct. 24, 2025)* (applying *Zadvydas* framework to habeas application challenging re-detention). Regardless, Petitioner has failed to provide sufficient evidence challenging the likelihood of his removability.

ICE derives its authority to detain noncitizens under federal law from 8 U.S.C. § 1231, which directs the Attorney General of the United States to effect the removal of any noncitizen from this country within 90 days of any order of removal. 8 U.S.C. § 1231(a)(1). The statute provides that, during the 90-day removal window, aliens ordered removed are to be detained. *Id.* § 1231(a)(2).

Aliens "may be detained beyond the removal period" if they are removable under 8 U.S.C. § 1227(a)(1)(C) or 8 U.S.C. § 1227(a)(2). *Id.* § 1231(a)(6). 8 U.S.C. § 1227(a)(1)(C)(i) provides that "[a]ny alien who was admitted as a nonimmigrant

and who has failed to maintain the nonimmigrant status in which the alien was admitted or to which it was changed . . ., or to comply with the conditions of any such status, is deportable." Similarly, § 1227(a)(2)(E)(i) allows the deportation of "[a]ny alien who at any time after admission is convicted of a crime of domestic violence." Petitioner does not contest that he is removable under 8 U.S.C. § 1227(a)(1)(C) or 8 U.S.C. § 1227(a)(2)(E)(i).

The Supreme Court of the United States clarified these statutory provisions in *Zadvydas*. 533 U.S. 678. In that case, the Supreme Court determined that the government may not use § 1231 to detain aliens indefinitely. *Id.* at 699. Rather, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* Courts facing these questions "must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.*

Reasonableness is measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* "[T]o limit the occasions when courts will need to make" difficult judgments, the Supreme Court recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. After that six-month period, the alien has the burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. After providing such a reason, the burden shifts to the government to provide evidence to rebut the alien's

14

showing. *Id.* "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

And under § 241.13(i)(2), ICE may revoke a noncitizen's release for purposes of removal "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).

"These regulations clearly indicate, upon revocation of supervised release, it is [ICE's] burden to show a significant likelihood that the alien may be removed." *Escalante,* 2025 WL 2206113, at *3. Otherwise, "[i]mposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications." *Id.*

But the plain language of § 241.13(i)(2) does not allow a court, in the first instance, to make an individualized finding that a changed circumstances has occurred. *Van Nguyen v. Hyde,* 2025 WL 1725791, at *3 (D. Mass. Jun. 20, 2025) (quoting *Kong v. United States,* 62 F.4th 608, 620 (1st Cir. 2023)). Instead, when ICE claims that it made such a determination, the court should review that claim considering the factors set out in 8 C.F.R. § 241.13(f) "instructing ICE on how it should make such a determination." *Id.* These factors include but are not limited to:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to

the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

8 C.F.R. § 241.13(f).

### a. ICE was not required to make an individualized determination of the likelihood of removal.

Respondents argue that, due to a 'change in circumstances" and because the United States has requested travel documents for Petitioner, there is now a high probability Petitioner will be removed in the reasonably foreseeable future pursuant to 8 C.F.R. § 241.13(i)(2)." Resp. at 4—5. The "change in circumstance" is that, previously, Vietnam refused to repatriate so-called "pre-1995 immigrants"—Vietnamese nationals who arrived in the United States as refugees before July 12, 1995—like Petitioner, Pet. ¶¶ 35, 37; *see also* Pet'r's App., Ex. 4; *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1083 (C.D. Cal. 2020), and because ICE determined that removal of pre-1995 immigrants was "unlikely" given Vietnam's refusal to repatriate them, ICE generally released detained pre-1995 immigrants with final orders of removal under OSUPs. *Trinh*, 466 F. Supp. 3d at 1083; Pet. ¶ 40. But in 2020, the United States and Vietnam signed a Memorandum of Understanding (2020 MOU) expressly providing for the removal of pre-1995 immigrants to Vietnam; and in June 2025, ICE rescinded the practice of releasing pre-1995 immigrants with final orders of removal. *See* Pet'r's, Exs. 2 & 4. Respondents claim that ERO chartered a flight to remove several pre-1995

immigrants on July 15, 2025, and expected another chartered removal flight on August 11, 2025. Resp'ts' App. 004 ¶ 14. Respondents also note that "some individuals are being removed to Vietnam on commercial flights." *Id.* 005 ¶ 16. As for Petitioner, the United States government is gathering travel documents to facilitate his removal. *Id.* at 5–6.

But Petitioner insists that this "generalized information does not provide the Court with an idea of how likely any given pre-1995 Vietnam immigrant is to be issued travel documents." Reply at 13–14. He cites authority from outside this Circuit for the proposition that ICE's decision to re-detain him "is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." Pet. ¶ 66 (citations omitted).

The requirement for an individualized determination purportedly derives from the text of § 241.13(i) and (f).[4] But courts in this District have concluded that

---

[4] The text of § 241.13(f) reads as follows:

> Factors for consideration. The HQPDU shall consider all the facts of the case including, but not limited to, the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts

neither provision requires ICE to make an "individualized determination" about the likelihood of removal. *See Nguyen, 797 F. Supp. 3d at 665–68*; *Nouansisouhak, 2025 WL 3165161, at *4*.

In *Nguyen*, the court disagreed that § 241.13(i) required ICE to make an "individualized determination" about the likelihood of removal. *Id.* at 665–66. The court reasoned that, contrary to the petitioner's arguments, "general changes" to the United States's ability to remove a category of people can satisfy this regulatory authority:

> There is no reason that a broad change in circumstances that applies to a broad group of aliens cannot have the effect of changing the circumstances of each of those particular aliens and thus let ICE determine that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. The changed circumstances need to be applicable to [the petitioner], but that does not mean that they must be unique to [the petitioner].

*Nguyen, 797 F. Supp. 3d at 665–68*.

The court also explained that the plain text of § 241.13(i) rebuffed an interpretation that would require a particularized determination of removability:

> The changed circumstances need not be that [the petitioner's] removal be certain or immediate. Rather, there need only be a significant likelihood that removal in the reasonably foreseeable future may occur. Any reading of this requirement based on these two phrases alone would not support [the petitioner's] contention that meaningful changes in the

---

> to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

> diplomatic relationship between the United States and Vietnam
> would be insufficient as a matter of law.

*Id.* at 666 (quoting 8 C.F.R. § 241.13(i)(2)). And the court noted that § 241.13(i)(2) specifically delegated the question of whether removal is likely to ICE, not to the court: "[ICE] may revoke an alien's release . . . **if . . . [ICE] determines** that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* (emphasis added). The court was, therefore, hesitant to encroach on the authority of the Executive Branch and "the Nation's need to 'speak with one voice' in immigration matters." *Id.* (quoting *Zadvydas*, 533 U.S. at 700).

The court similarly disagreed that § 241.13(f) supported the need for an individualized determination. *Id.* The court explained that this provision pertains to "a completely separate procedure—the initial determination of whether to place a detained alien on probation." *Id.* So § 241.13(f) was "irrelevant" to re-detention under § 241.13(i). *Id.* at 667. And if this were not the case, the court reasoned that § 241.13(f) would still not require a particularized assessment of removability because the provision "simply provides a nonexhaustive list of factors" without making any factor necessary or sufficient. *Id.*

For the same reasons, the District Judge should similarly conclude that ICE need not make an individualized determination about the removability of Petitioner.

19

### b. Changed circumstances currently justify Petitioner's re-detention.

Respondents submit that "there is now a significant likelihood that petitioner can be removed." Resp. at 7 (internal quotations omitted). In support, they point to the DO's declaration, which states that, at the time of Respondents' Response, ICE was preparing a Travel Document Request to remove Petitioner to Vietnam. App. 004 ¶ 13. The DO also states that ICE removed several pre-1995 immigrants on chartered flights in July 2025 and expected to remove more in later months. *Id*. 004–05 ¶¶ 14–16. Based on the recent success in removing pre-1995 immigrants and the lack of impediments to removal, the DO declared that ICE could effect Petitioner's removal in the "near future." *Id*. 005 ¶ 17.

Petitioner disagrees that his removal is significantly likely. He argues that:

- The 2020 MOU is "aspirational and discretionary." Pet. ¶ 52;

- ICE has had difficulties removing pre-1995 immigrants under the 2020 MOU. *See id*. ¶¶ 54–57;

- The numbers cited by the DO "are meaningless without more information." *Id*. at 14. Indeed, other courts outside the Fifth Circuit have found that total removal numbers of Vietnamese nationals—without context related to pre-1995 immigrants and the total success rate of removal—cannot justify re-detention. Reply at 13;

- The process for requiring travel documents for pre-1995 immigrants "is apparently so daunting and time consuming that ICE still has not even submitted the request to its headquarters for [Petitioner]." *Id*.; and

- ICE took Petitioner into custody based on a generalized information applicable to all pre-1995 immigrants, not an individualized determination that Petitioner himself could be removed. *Id*.

Again, courts in this District have rejected substantially identical arguments.

20

The petitioner in *Nguyen*, like Petitioner here, argued that his removal was not foreseeable because the 2020 MOU was aspirational and did not result in many removals of pre-1995 immigrants. *Nguyen*, 797 F. Supp. 3d at 658, 668. But the court reminded the parties that "the Executive Branch has 'primary . . . responsibility' in foreign affairs, and the Court is to give the respondents leeway in such matters." *Id.* (quoting *Zadvydas*, 533 U.S. at 700) (alteration in original). And the petitioner did not provide evidence to refute this deference:

> [The petitioner's] refutation of the respondents' expert judgments on this matter relies almost entirely on interpreting a single memorandum that is almost five years old. For evidence that the 2020 changes were ineffective, he presents data from 2021. Further, [the petitioner] attached to his habeas petition a report from the Asian Law Caucus that supports the respondents' position because it says that ICE began in January 2025 "to detain and deport pre-1995 immigrants at higher numbers than it has in the past." [The petitioner] has thus provided no evidence or reasoned analysis to refute the respondents' judgment in this case that today, in the summer of 2025, the relationship between the United States and Vietnam has not changed so much as to make a significant likelihood that those like [the petitioner] may be removed in the reasonably foreseeable future. To the contrary, the undisputed evidence is that relationship[] between the two countries has changed since January 2025, travel documents are being approved, and removals are happening at an increasing rate.

*Id.* at 668 (internal citations omitted). In fact, the court found that the respondents' declarations made clear that circumstances had sufficiently changed to warrant removal. *Id.* at 668–69.

Additionally, "there is no requirement that the government 'definitively' have the travel documents in hand and confirmation of a removal flight to properly detain him." *Nouansisouhak*, 2025 WL 3165161, at *4.

Also undercutting Petitioner's argument that he cannot be removed is the removal of a similarly situated individual who filed a habeas application in this District one day before this action.[5] *See Nguyen v. Noem*, No. 3:25-cv-1913-L-BT (N.D. Tex. July 24, 2025). There, the petitioner was also a pre-1995 immigrant that challenged the ability of Respondents to remove him to Vietnam. *Id.*, ECF No. 1 ¶¶ 23, 30, 54–57, 66–68. Despite making many of the same arguments raised here, the respondents removed him to Vietnam. *Id.*, ECF No. 25. So the Court dismissed the action as moot. *Id.*, ECF Nos. 26–27.

Finally, to the extent that Petitioner argues that his detention is unnecessary to assure his appearance for removal, Respondents need not make such a showing. *See Nguyen*, 797 F. Supp. 3d at 670.

Respondents have shown that they re-detained Petitioner because the previous barriers to removing him to Vietnam have been eliminated—or at least lowered—and it is therefore significantly likely that he can be removed in the reasonably foreseeable future. Petitioner offers only conclusory assertions to dispute these changed circumstances. Unlike similarly situated petitioners that

---

[5] Petitioner's counsel here also represented the petitioner in *Nguyen v. Noem*, No. 3:25-cv-1913-L-BT (N.D. Tex. July 24, 2025).

have successfully obtained habeas relief in other jurisdictions, Petitioner has not provided evidence showing how rare it is that Vietnam repatriates pre-1995 immigrants or that it typically takes far longer than 30 days for Vietnam to issue travel documents for pre-1995 immigrants. *See, e.g.*, *Dinh Le, v. Bondi*, 2026 WL 309239, at *3 (W.D. Wash. Feb. 5, 2026).

Accordingly, the District Judge should reject Petitioner's claim that Respondents have violated § 241.13(i)(2) or the Fifth Amendment.

### c. Respondents may not detain Petitioner indefinitely.

Petitioner has remained in ICE custody since he was re-detained on July 22, 2025. Pet. ¶ 19. Thus far, this re-detention has spanned 7 months. But the Court must also consider Petitioner's prior ICE detention. *See Abuelhawa v. Noem*, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) ("Most courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated by a concern that the federal government could otherwise detain aliens indefinitely by continuously releasing and re-detaining them.") (citations omitted). Following his final order of removal, Petitioner remained in ICE detention between March 20, 2023, and June 13, 2023. *See* Pet'r's App. at 76–77; Pet. ¶ 17; Resp. at 2. As such, Petitioner has now been detained by ICE for a total of 10 months as of the date of this recommendation.

Petitioner's detention has thus exceeded the six-month presumption of reasonableness set forth in *Zadvydas*. But this presumption "is not a bright line."

*Romero v. Ladwig*, 2026 WL 321437, at \*14 (M.D. La. Feb. 6, 2026) (citing *Clark v. Martinez*, 543 U.S. 371, 384 (2005); Ian Bratlie & Adriana Lafaille, *A 180-Day Free Pass? Zadvydas and Post-Order Detention Challenges Brought Before the Six-Month Mark*, 30 Geo. Immigr. L.J. 213, 239 (2016)). "[W]hether a noncitizen's detention is constitutional hinges on whether his removal from the United States is reasonably likely in the foreseeable future, not on how long the noncitizen has been detained." *Id.* (citation and internal quotations omitted).

The Court finds that Respondents have provided enough information to suggest that Petitioner's removal is significantly likely in the reasonably foreseeable future. But the government may not detain Petitioner indefinitely. *See Tran v. Mukasey*, 515 F.3d 478, 484 (5th Cir. 2008).

The lack of progress in removing Petitioner is concerning—especially since Petitioner "is not attempting to stop his removal to Vietnam now," Reply at 3, and because the government was able to quickly remove a similarly-situated individual re-detained around the same time as Petitioner. *See Nguyen*, No. 3:25-cv-1913-L-BT. Some courts have determined that such a lack of progress suggests that removal is unlikely in the foreseeable future. *See Misirbekov v. Venegas*, 2025 WL 3033732, at \*2 (S.D. Tex. Oct. 29, 2025) (holding that prolonged detention of an alien violated *Zadvydas* and the Fifth Amendment where the lack of progress toward removing the petitioner made removal unlikely in the foreseeable future).

24

Accordingly, the Court encourages Respondents that they should proceed with Petitioner's removal in an expeditious manner. "[F]ederal courts have recognized that the prohibition against second or successive petitions does not apply to habeas petitions brought under . . . Section 2241." *Sam v. Louisiana*, 2007 WL 120818, at *6 (E.D. La. Jan. 11, 2007) (citing *Felker v. Turpin*, 518 U.S. 651, 662–63 (1996); *Barapind v. Reno*, 225 F.3d 1100, 1111 (9th Cir. 2000)). So there is no bar to Petitioner bringing another habeas application challenging his non-removal if new evidence arises—such as the government's inability to remove him.

## Recommendation

For all these reasons, the District Judge should deny Petitioner's habeas application and dismiss this action.

**SO RECOMMENDED.**

February 25, 2026.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996)*.